UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.: 16-23744-CIV-UNGARO

BRYAN RAMIREZ,

        Plaintiff,

v.

DIAMOND TOUCH, INC. d/b/a
GRANBURY SOLUTIONS, *et. al.*,

        Defendants.

**DEFENDANT ORI TAMUZ' RENEWED MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT AND VACATE THE ORDER GRANTING MOTION FOR FINAL DEFAULT JUDGMENT AND, IN THE ALTERNATIVE, MOTION TO QUASH AND MOTION FOR RECONSIDERATION**

Defendant ORI TAMUZ ("Defendant"), by and through undersigned counsel, hereby files this Renewed Motion to Set Aside Clerk's Entry of Default [D.E. 19] and Vacate Order Granting Motion for Final Default Judgment [D.E. 21] and, in the Alternative, Motion to Quash and Motion for Reconsideration. In support, Defendant states:

**BACKGROUND**

1. This action was commenced on July 28, 2016.

2. Plaintiff apparently attempted to serve Defendant on August 27, 2016.

3. Defendant was in Israel from August 11, 2016 through August 28, 2016. *See* Sworn Declaration of Ori Tamuz attached hereto and incorporated herein as **Exhibit "A."**

4. On September 9, 2016, undersigned counsel filed his Notice of Appearance on behalf of a co-defendant, NovaNovaPos, Inc. ("NovaNova"). [D.E. 8].

5. On September 28, 2016, Plaintiff filed a Return of Service on Defendant, wherein the server falsely attested that he had personally served Defendant on August 27, 2016. [D.E. 15]. Immediately after filing the Return of Service, on September 28, 2016, Plaintiff moved for Entry of Default by the Clerk. [D.E. 16]. That same day, the Court ordered the Clerk to enter a default against Defendant, and the Clerk complied accordingly. [D.E. 18-19]. At the same time, the Court ordered Plaintiff to file his Motion for Default Final Judgment. [D.E. 18].

6. On September 29, 2016, Plaintiff moved for entry of default judgment. [D.E. 20]. On September 30, 2016, the Court granted Plaintiff's Motion. [D.E. 21].

7. On October 3, 2016, undersigned counsel filed an appearance on behalf of Defendant. [D.E. 22]. Thereafter, on October 10, 2016, Defendant filed his Verified Motion to Vacate Clerk's Entry of Default and Order Granting Motion for Final Default Judgment ("Motion to Vacate"). [D.E. 23]. As grounds for its Motion to Vacate, Defendant explained that he was never properly served with process in this case and that Plaintiff's process server made material misrepresentations to this Court, and also that he had good cause for failing to respond to the Complaint, that he had meritorious defenses, and that Plaintiff would not be prejudiced by the granting of his Motion to Vacate. [D.E. 23]. Also, as part of his Motion to Vacate, Defendant provided irrefutable proof that he was in Israel on August 27, 2016 – the date of the purported service.

8. Nevertheless, on October 18, 2016, Plaintiff filed his Response to the Motion to Vacate, arguing, incredibly, that Defendant *was* properly served, and attaching an *Amended* Return of Service, purporting to evidence that Plaintiff effectuated *substitute* service on Defendant at the same time and date as indicated on the original Return of Service. [D.E. 26].

9. Defendant was out of the country with his family. *See* **Exhibit "A."** No one else resides at Defendant's residence, other than his wife and child, who were with him in Israel during the relevant time, and a female housekeeper (who did not stay at the residence during Defendant's trip to Israel). *Id*. During the Defendant's and his family's absence from the country, no one lived at their residence, but some people (housekeeper, relatives, neighbors, etc.) had or may have had access to the residence. *Id*. Upon his return from Israel on August 28, 2016, Defendant did not find the lawsuit papers affixed to his front gate or anywhere else on the property. *Id*.

10. Defendant learned about the purported service on him from undersigned counsel, who did not represent Defendant at that time but did represent NovaNova.. *Id*.

11. On October 28, 2016, Defendant filed his Verified Reply to the Response to the Motion to Vacate, explaining why the purported substitute service on the Defendant was improper. [D.E. 28].

12. On November 1, 2016, the Court denied the Motion to Vacate, stating that "in moving to set aside Final Default Judgment, Defendant does not apply the appropriate legal analysis to the facts of the case" and therefore not finding "that Defendant's default judgment should be set aside at this time." [D.E. 34].

13. Based on the foregoing and for the reasons articulated below, Defendant files the instant motion ("Motion"), this time applying the proper legal analysis with greater precision, and, in the alternative, requests that the Court quash the service of process on the grounds of lack of personal jurisdiction and to reconsider its November 1, 2016, Order.

14. As soon as Defendant became aware of the default, he sought and, in fact, retained counsel to represent him. Undersigned counsel immediately sought to have the default

set aside by contacting Plaintiff's counsel, as required by the rules, and providing copies of Defendant's travel documents proving that Defendant was out of the country, followed by the filing of the Motion to Vacate. The default was not the result of either culpable or willful conduct or indifference, and it should be set aside.

15. Although Defendant can challenge service of process, because he lives and works within the Court's jurisdiction and therefore could and would, presumably, be served properly in the future, Defendant will file an answer to the operating complaint once the clerk's default and the order granting default judgment are vacated. As Defendant previously explained, although he vigorously disputes the validity of the service of process on him, his key objective is to set aside the Default so that he can defend himself on the merits.

16. Defendant filed his Motion to Vacate in good faith and it is not his intention to evade service. When Plaintiff attempted to serve Defendant on August 27, 2016, Defendant was in Israel, was not being represented by undersigned counsel, and did not find the Complaint attached to his gate where the process server supposedly left it. Defendant was completely blindsided by the Default. Obviously, at this point Defendant is well aware of the lawsuit and the allegations against him and wishes to defend this lawsuit on its merits. As such, Defendant requests that this Court deem Defendant's Answer and Affirmative Defenses, contemporaneously filed with the instant motion, as filed. *See* Defendant's Answer and Affirmative Defenses attached hereto and incorporated herein as **Exhibit "B."**

## MEMORANDUM OF LAW

It is axiomatic that Florida jurisprudence favors liberality in the area of setting aside defaults, in order that parties may have their own controversies decided on the merits. *See Gulf Coast Fans, Inc. v. Midwest Elecs. Imps., Inc.*, 740 F. 2d 1499 (11th Cir. 1984) (stating "defaults

are seen with disfavor because of the strong policy determining cases on their merit"). Any reasonable doubt with regard to setting aside a default should be resolved in favor of setting aside a default and allowing a trial on the merits, as there is a strong preference for hearings on the merits. *Design Bureau Corp. v. Colvin*, No. 08-22455-CIV-HOEVELER, 2009 U.S. Dist. LEXIS 81237, at *2 (S.D. Fla. Aug. 19, 2009).

Under Federal Rule of Civil Procedure 55(c), the Court "may set aside an entry of default for good cause and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). In assessing good cause, a court should consider the following factors: (1) whether the default was the result of culpable or willful conduct on the part of defaulting party; (2) whether setting aside the default will result in prejudice to the plaintiff; and (3) whether the defaulting party has a meritorious defense. *Compania Interamericana Exp.-Imp., S.A. v. Compania Domenicana De Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). Pursuant to Rule 60(b), a court may relieve a party or party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . (4) the judgment is void . . . or (6) any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b). "In order to have the default judgment set aside, [Defendant] must show that it had a meritorious defense, that [Plaintiff] would not be prejudiced if the judgment were set aside, and that it had a "good reason" for failing to respond to [Plaintiff's] complaint."). *Sloss Industries Corp. v. Eurisol*, 488 F.3d 922, 934 (11th Cir. 2007).

The "good cause" standard used in setting aside an entry of default is less rigorous than the excusable neglect standard used in setting aside a default judgment. *Microsoft Corp. v. Gunther*, No. 3:07-cv-596-J-32TEM, 2007 U.S. Dist. LEXIS 89488, at *1 (M.D. Fla. Dec. 5, 2007) (citing *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F. 2d 524, 528 (11th Cir. 1990)).

Under the facts before this Honorable Court, good cause is evident, and the Clerk's Default [D.E. 19] should be vacated. Although the Final Default Judgment has not yet been entered in this case, the entry of same is imminent due the Court's Order Granting Motion for Final Default Judgment [D.E. 21]. Accordingly, Defendant also makes an argument as to why the final default judgment should not be entered or, if entered, should be set aside based on mistake, inadvertence, surprise, or excusable neglect under Rule 60(b)(1) and based on the judgment being void under Rule 60(b)(4).

**I.  Meritorious Defense**

First, Defendant has meritorious defenses that would affect the outcome of this case. Plaintiff claims that Defendant was his employer and that he violated the Fair Labor Standards Act ("FLSA") by failing to pay Plaintiff overtime. However, Plaintiff is not entitled to this relief from Defendant. Defendant is a former officer of the now dissolved co-defendant, NovaNova. Defendant was never Plaintiff's "employer" under the FLSA. NovaNova employed Plaintiff from August of 2012, and Defendant and others sold NovaNova to co-defendant Diamond Touch, Inc. ("Diamond Touch"), effective on May 1, 2014. Thus, not only does Plaintiff not have legal basis for suing Defendant individually, but also, if Defendant was Plaintiff's employer initially, Defendant certainly could not have been Plaintiff's employer once Diamond Touch took over (or before NovaNova employed him).

Also, if NovaNova is found not to be Plaintiff's employer after May 1, 2014, the Defendant will likely be found not to be liable to Plaintiff because in this scenario, the Defendant's potential liability would only be derivative of that of NovaNova's. *See for instance*, *Casseus v. First Eagle, L.L.C.*, No. 07-23228-CIV-GOLD/McALILEY, 2008 U.S. Dist. LEXIS 32249, at *13 (S.D. Fla. Apr. 16, 2008).  When a business is found not to be covered under the

FLSA (as it should here after May 1, 2014), then an individual officer of that business also cannot be liable. *Galdames v. N & D Inv. Corp.*, 21 Fla. L. Weekly Fed. D529 (U.S. S.D. Fla. September 24, 2008).

In addition, Defendant incorporates by reference all of the affirmative defenses raised by NovaNova. [D.E. 13]. In sum, Defendant has several meritorious defenses that will affect the outcome of this case.

Additionally, contemporaneous with the filing of the instant motion, Defendant is filing his Answer and Affirmative Defenses. *See* **Exhibit "B."** The simple fact that Defendant served an answer and affirmative defenses fulfills its "meritorious defense" requirement under Rule 55(c). *See Meehan v. Snow*, 652 F. 2d 274, 276 (2d Cir. 1981).

## II. Prejudice to Non-Defaulting Party

Granting the instant Motion will not prejudice Plaintiff. The minimal delay in permitting Defendant, who was not properly served, to respond and defend against the allegations in this cause will not cause prejudice to Plaintiff and no actual injustice will ensue. Moreover, Defendant has stated that he will be filing his Answer and Affirmative Defenses contemporaneously with this Motion.

Plaintiff will still have the ability to assert his claims, engage in discovery, and present his case to the fact-finder. The setting aside of the Clerk's Default and the Order Granting Plaintiff's Motion for Final Default Judgment will not affect Plaintiff's ability to recover damages in this action, if he prevails.

Moreover, despite the Order Granting Plaintiff's Motion for Final Default Judgment, the entry to the Final Default Judgment itself would be premature and therefore Plaintiff would not be able to obtain and enforce the monetary judgment against Defendant until and unless he

prevails against co-defendant NovaNova. Default judgment is generally premature against a non-appearing defendant if that defendant, as here, is jointly and severally liable with other defendant(s) who have appeared in the action. *See* Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2690 (3d ed. 1998) (citing *Frow v. De La Vega*, 82 U.S. 552, 554 (1872); *Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc*., 740 F.2d 1499, 1512 (11th Cir. 1984) (even when defendants are similarly situated, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits); *Adidas AG v. Adidasjeremyscottitalia.eu*, No. 13-CV-62712, 2014 WL 11722017, at *1 (S.D. Fla. Aug. 14, 2014). When there are allegations of joint and several liability, judgment should not be entered against the defaulting defendant until the matter is adjudicated against the remaining defendants. *Id*.

Accordingly, the granting of the instant Motion will not prejudice Plaintiff.

### III.    Good Reason; No Willful or Culpable Conduct

At all times, Defendant acted in good faith, did not evade service of process, and did not willfully and knowingly fail to answer the Complaint. When Plaintiff attempted to serve Defendant on August 27, 2016, Defendant was in Israel, was not being represented by counsel, and did not find the Complaint attached to his gate where the process server supposedly left it. Defendant was completely blindsided by the Default.  Especially since it was first obtained by a false statement of the Plaintiff's process server and even though it was apparently "amended", the process server *never* stated that process was substitute served on someone of suitable age and with a place of abode at the Defendant's residence.

Defendant learned of the default on October 3, 2016, when the undersigned told him about the default. *See* **Exhibit "A."** Defendant, upon realizing the procedural posture, took the

appropriate steps necessary to litigate this case, including the retention of counsel, who then filed the Motion to Vacate [D.E. 23] and now the instant Motion. Undersigned counsel timely communicated to the attorneys for the Plaintiff and inquired about their position regarding a motion to set aside, to no avail (*see* Composite **Exhibit "C"**)[1]. The Motion to Vacate was filed immediately after undersigned office resumed operations following a two-day closure as a result of Hurricane Matthew. Furthermore, the instant Motion is being filed within 5 calendar days (or 3 business days) of the Court's Order Denying Motion to Vacate [D.E. 34] and, in the interest of judicial efficiency and litigating this case on the merits, is being accompanied by Defendant's Answer and Affirmative Defenses.

The default was neither culpable nor willful. This is not a situation in which Defendant willfully refused to respond to the Summons or sat on his rights when learning of the Default. Defendant acted in good faith at all times.

Conversely, it should be noted, the Plaintiff was and is acting in bad faith in pursuing and guarding the Default, because he knows that Defendant has overriding defenses to his lawsuit and thus wants to avoid having to prove the merits of his case against the Defendant.

### IV. Mistake, Inadvertence or Excusable Neglect

As detailed in the declaration attached hereto, Defendant was not aware of the purported service on him. Contrary to the Amended Return of Service, Defendant did not attempt to avoid service at any point in time. As discussed in greater detail in Section V *infra*, Plaintiff failed to properly serve Defendant.

---

[1] Plaintiff's attorneys have been vague and fickle in articulating their position regarding Defendant's Motion to Vacate. Initially, Plaintiff's lawyers cited the Jewish Holidays for their delay to respond; then later suggested that the documents the undersigned sent them in support of a motion to vacate default were "very suspicious"; and when provided with requested clarification, they insisted the documents sent "fall short of convincing" (*see* **Exhibit "C"**).

It is true that, as an officer of co-defendant NovaNova, Defendant was aware of the present lawsuit and that he was named as a party. However, Defendant reasonably believed that a process server would actually serve the Summons and Complaint on him, at which point he would hire counsel and respond to the Complaint. Even monitoring the Court's docket and discussing the case status and filings with NovaNova's counsel – which Defendant did regularly – would not have put Defendant on notice of his apparent obligation to answer the Complaint because Plaintiff did not file the Return of Service [D.E. 15] until September 28, 2016 – nine days after the Answer was due and the same day when the Court's Default was requested and entered.

The default was the result of Defendant's reasonable and good faith belief that he was not served. The default, if entered correctly, was, at worst, due to mistake, inadvertence or excusable neglect in Defendant's belief that he was not as of yet properly served. Accordingly, the default should be vacated.

### V. The Final Judgment, if Entered, Would be Void

Rule 60(b)(4) provides that the court may set aside a final judgment against a party where "the judgment is void." Fed. R. Civ. P. 60(b)(4). To set aside a judgment for being void, a party must show that the court that rendered the judgment "lacked jurisdiction of the subject matter, or of the parties, or . . . acted in a manner inconsistent with the due process of law." *Harris v. Corrections Corp. of America*, 332 Fed.Appx. 593, 594 (11th Cir. 2009). "Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void." *In re Worldwide Web Sys.*, 328 F.3d 1291, 1299 (11th Cir. 2003). In this case, Plaintiff failed to properly serve Defendant. Because the purported service of process on Defendant was invalid, it follows that the Final Default Judgment, if entered, would be void.

The original Return of Service stated that the server *personally* served the Defendant. [D.E. 15]. Nowhere in the original Return of Service does it explain that the papers were left at the front gate and that the server never actually saw the Defendant or that he merely spoke to an unidentified person via a callbox. The original Return of Service is false. After Defendant provided irrefutable evidence that he was out of the country on August 27, 2016 – the day of the attempted service – the server submitted an Amended Return of Service, where he changed service from "personal" to "substitute" and admitted that he had previously merely *believed* the person who answered the callbox to be Defendant, that he *believed* the Defendant to be evading service, and that he did *not* serve him personally. A return of service serves as *prima facie* evidence that service was validly performed. Where a return of service is invalid on it face, the return of service cannot be relied on as evidence that service of process was valid. *Re-employment Servs., Ltd. v. Nat'l Loan Acquisitions Co.*, 969 So. 2d 467, 471 (Fla. 4th DCA 2007). Here, the Amended Return of Service is inherently unreliable because the original Return of Service was inaccurate and contained misrepresentations; was later amended to fit the newly presented facts about Defendant's absence from the county; and is based on "beliefs" and assumptions, and not facts. The server assumed that Defendant was the one who answered the callbox, that he was home, and that he was evading service. Of course, that is simply not true since Defendant provided irrefutable proof that he was out of the country for almost the entire time the server was trying to serve him.[2] The server perjured himself in the original Return of Service and thus his Amended Return of Service is suspect and cannot be relied on as evidence.

Section 48.031, Florida Statutes, states the following:

---

[2] The Return of Service indicates that the request to serve was received on August 9, 2016. Defendant provided irrefutable proof that he left the country on August 11, 2016, which means he was not there for any or most of the service attempts, contrary to the server's insinuation that he was home and evading service.

> **Service of Process Generally; Service of Witness Subpoenas**.-- (1)(a) Service of original process is made by delivering a copy of it to the person to be served with a copy of the complaint, petition, or other initial pleading or paper, *or by leaving the copies at his or her usual place of abode with any person residing therein who is 15 years of age or older, and informing the person of their contents*. Minors who are or have been married shall be served as provided in this section.

Florida courts have been consistently strict in applying section 48.031. For example, leaving process with an apartment doorman in the apartment lobby was considered insufficient service. *Groshein v. Greenpoint Mortg. Funding, Inc*., 819 So. 2d 906 (Fla. 4th DCA 2002); *Smith v. F.D.I.C.*, 711 So. 2d 1367 (Fla. 4th DCA 1998). Similarly, leaving papers affixed to the front gate is insufficient, given the surrounding circumstances in this case and the possibility that someone else may remove them.

Under Florida law, service is proper if a party being served attempts to avoid service, and the process server "leaves the papers at a place from which such person can easily retrieve them and takes reasonable steps to call such delivery to the attention of the person to be served." *Olin Corp. v. Haney*, 245 So. 2d 669, 670-71 (Fla. 4th DCA 1971). As discussed above, Defendant was not attempting to avoid service, and was in a foreign country at the time of the service attempt. Moreover, under these circumstances, affixing the papers to the front gate and informing some unknown person via a callbox of that fact is insufficient because Defendant, who was out of the country, had no knowledge of that fact and could not easily retrieve the papers. When Defendant returned to his residence, there were no papers affixed to his front gate. Accordingly, Defendant was not properly served.

Furthermore, Plaintiff failed to comply with statutory requirements for substitute service. Under the Federal Rules of Civil Procedure, service of process may be made either by following state law for service of process (which, here, would be Florida law) or the requirements of the

federal rules. Fed. R. Civ. P. 4(e). Under the federal rules, substitute service may be made by "leaving a copy at the individual's dwelling or usual place of abode ***with someone of suitable age*** and discretion ***who resides there***." Fed. R. Civ. P. 4(e)(2)(B) (emphasis added). Similarly, Florida law provides for substitute service by leaving a copy of the summons and complaint at the person's usual place of abode ***with a person 15 years of age or older residing there***. Fla. Stat § 48.031(1)(a). "Statutes governing service of process are to be strictly construed to insure that a defendant receives notice of the proceedings; the burden of proving the validity of service of process is on the plaintiff." *Martin v. Salvatierra*, 233 F.R.D. 630, 631 (S.D. Fla. 2005); *Busman v. Dept. of Revenue*, 905 So. 2d 956, 958 (Fla. 3d DCA 2005).

Thus, for substitute service on Defendant to be proper – and, therefore, for the Default to have been entered correctly – Plaintiff must demonstrate, under either federal or Florida law, that the person with whom the server left the documents was 15 years of age or older and resided at the place indicated on the Amended Return of Service. Plaintiff and his server have not met this statutory requirement, and are unable to do so.

As discussed *supra*, the undisputed proof submitted with the Motion to Vacate demonstrates that Defendant was in Israel on the day of the purported service and during the previous service attempts. *See* **Exhibit "A."** Defendant was away with his family, and no-one residing at his home was present during his absence, although others (housekeeper, relatives, etc.) did have access to his home. *Id*. An unidentified person apparently answered the call box. That person did not reveal his age or identity and did not confirm that he resided there. The process server did not verify that person's age, identity or residence. Therefore, the server's affidavit stating that the papers were delivered to "John Doe as co-resident . . . who resides

therein, who is fifteen (15) years of age or older . . ." is nothing but another assumption and misrepresentation.

Defendant reiterates that statutes regulating service of process are to be strictly construed. *Torres v. Arnco Constr., Inc.*, 867 So. 2d 583, 856 (Fla. 5th DCA 2004); see also *Carter v. Lil' Joe Records, Inc.*, 829 So. 2d 953, 954 (Fla. 4th DCA 2002). Since "statutes authorizing substituted service are exceptions to the general rule requiring a defendant to be served personally, due process requires strict compliance with their statutory requirements." *Id*. (citing *Monaco v. Nealon*, 810 So. 2d 1084 (Fla. 4th DCA 2002); *Mercy Lu Enters., Inc. v. Liberty Mut. Ins. Co.*, 681 So. 2d 758 (Fla. 4th DCA 1996). It is unequivocal that Plaintiff's server did not strictly comply with the statutory requirements of ascertaining that the person with whom he "left" the papers was over the age of 15 and "residing therein."

Based on the foregoing, the substitute service of process in this case was improper and invalid and therefore the final judgment, if entered, would be void.

### VI. Motion for Reconsideration

In the alternative, Defendant requests that this Honorable Court reconsider its Order Denying Motion to Vacate [D.E. 34]. It is well-settled that a motion for reconsideration is appropriate when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Z.K. Marine Inc. v. M/V Archigetis*, 808 F.Supp. 1561, 1563 (S.D. Fla. 1992). Reconsideration should be granted where necessary to correct for "clear error" or to "prevent manifest injustice." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F.Supp.2d 1366, 1369 (S.D. Fla. 2002).

Defendant requests that this Court reconsider its Order Denying Motion to Vacate because the Motion to Vacate does, in fact, apply the appropriate legal analysis to the facts of the case. The Motion to Vacate makes it clear that it is brought "pursuant to F.R.C.P. 55(c), 60(b)(3), 60(b)(4) and 60(b)(6)." [D.E. 23, introductory paragraph]. The Motion to Vacate then explains the standard for setting aside the default under Rule 55(c) and default judgment under Rule 60(b). [D.E. 23, ¶¶ 9 & 10]. And finally, the Motion to Vacate applies the legal framework of Rule 55(c) and 60(b) to the facts and circumstances of this case. [D.E. 23, ¶¶ 13 & 17]. Nowhere does the Motion to Vacate mention that it is seeking to quash service of process; it is clearly a motion to set aside default. Although Defendant puts a lot of emphasis on the ineffectiveness of the service of process, it is done not with the intention to seeking to quash service, but for the purpose of demonstrating "good cause" under Rule 55(c) as well as for demonstrating that the forthcoming judgment would void (for lack of service) and procured through fraud (the server's misrepresentations). Admittedly, Defendant could have been more specific and clear in his analysis. However, Defendant relied on proper authorities and engaged in substantially correct legal analysis. Because it appears that the Court misunderstood Defendant, Defendant requests that this Honorable Court reconsider its Order Denying Motion to Vacate [D.E. 34].

**VII.  Conclusion**

In sum, Defendant should not be deprived of the opportunity to present his strong defenses in this case and defend on the merits. Counsel for Defendant has also acted with all reasonable speed and due diligence in this case and has not sought to delay these proceedings.

For the foregoing reasons, the Defendant, ORI TAMUZ, respectfully requests this Honorable Court to grant the instant Motion, vacate the Default entered against Defendant [D.E. 19], vacate the Order Granting Plaintiff's Motion for Final Default Judgment [D.E. 21] and grant

Defendant any other relief that this Court deems equitable and just. In addition, Defendant requests to be reimbursed for fees associated with this motion because the Plaintiff and his attorneys should have clearly agreed to set aside the Default without the need for briefing that issue once Defendant presented proof to Plaintiff's counsel that he was out of the country during the attempted service; when Defendant conclusively showed Plaintiff in his Motion to Vacate that his process server was committing fraud upon the Court; and when Defendant attempted to confer with Plaintiff before the filing of this Motion. And finally, Defendant respectfully requests that this Honorable Court deem Defendant's Answer and Affirmative Defenses, contemporaneously filed with the instant motion, as filed. In the alternative, Defendant requests that this Honorable Court reconsider its Order Denying Motion to Vacate [D.E. 34].

### CERTIFICATE OF GOOD FAITH EFFORT TO RESOLVE ISSUES
### (Local Rule 7.1(A)(3))

**I HEREBY CERTIFY** that I have conferred with counsel for Plaintiff in a good faith effort to resolve the issues raised in the motion and have been unable to do so.

Respectfully submitted,

**s/R. Martin Saenz**
R. Martin Saenz (FBN: 0640166)
E-mail: msaenz@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
*Counsel for Defendant NovaNovaPOS Inc
and Ori Tamuz*

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 8, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      *By: s/ R. Martin Saenz*

## SERVICE LIST

**BRYAN RAMIREZ v. DIAMOND TOUCH, INC. d/b/a GRANBURY SOLUTIONS, et. al.**
Case No.16-23744-CIV-UNGARO
**United States District Court, Southern District of Florida**

**R. Martin Saenz, Esq.**
E-Mail: msaenz@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 N.E. 30th Avenue, Suite 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
*Counsel for NovaNovaPOS, Inc.*
*and Ori Tamuz*

**Allison Gluvna Folk, Esq.**
Jackson Lewis P.C.
One Biscayne Tower, Suite 3500
2 S. Biscayne Boulevard
Miami, FL 33131
(305) 577-7600
Fax: (305) 373-4466
Email: allison.folk@jacksonlewis.com
*Attorney for DIAMOND TOUCH, INC.*

**Anthony Maximillien Georges-Pierre, Esq.**
Remer & Georges-Pierre, PLLC
Court House Tower
44 West Flagler Street, Suite 2200
Miami, FL 33130
Tel: 305-416-5000
Fax: 305-416-5005
Email: agp@rgpattorneys.com
*Attorney for Plaintiff*